IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


MICA MORRIS                                                                                    PLAINTIFF


VS.                                       CASE NO. 3:17CV00020 PSH


NANCY A. BERRYHILL, Commissioner,
    Social Security Administration                                                DEFENDANT



ORDER

Plaintiff Mica Morris ("Morris"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny her claim for Supplemental Security Income benefits (SSI), contends the Administrative Law Judge's (ALJ) decision that she is not disabled is not supported by substantial evidence. Specifically, Morris faults the ALJ for: (1) assigning "great weight" to the opinion of Dr. Jones, a one-time consultative examiner, regarding her mental limitations; and (2) failing to properly assess her intellectual disability. The parties have ably summarized the medical records and the testimony given at the administrative hearings.

*Background:*

The history of the case is lengthy. Morris initially filed her application for benefits in September 2008, alleging disability beginning on January 1, 2006. This application was denied by the ALJ, who found the Medical-Vocational Guidelines dictated a finding of not disabled because Morris had the residual functional capacity ("RFC") to perform the full range of sedentary work. (Tr. 74-83). The Appeals Council vacated the ALJ's decision, finding the use of the Medical-

1

Vocational Guidelines was inappropriate since Morris suffered from the severe impairments of bipolar disorder and anxiety disorder. The case was remanded with directions for the ALJ to obtain testimony from a vocational expert and consider Morris' mental limitations and their effect on her occupational base. (Tr. 88-89).

Following a second administrative hearing, the ALJ denied the application and the Appeals Council declined review. (Tr. 9-29, 1-6). Morris then sought federal court relief, and the ALJ's decision was reversed and remanded. The Court directed the ALJ to obtain a mental RFC assessment from Morris' treating psychiatrist[1] or, in the alternative, order a consultative mental evaluation addressing her mental RFC. (Tr. 653-659).

A third hearing was conducted in January 2015. The ALJ determined Morris was capable of performing sedentary work with numerous limitations, including limitations tied to mental impairments. Relying upon testimony from a vocational expert, the ALJ found, at step five of the sequential evaluation, Morris was capable of performing the jobs of assembler and inspector. Therefore, the ALJ found she was not disabled. (Tr. 666-679). The Appeals Council, however, remanded the case, finding the ALJ failed to contact Felts for clarification about Morris' mental impairments. (Tr. 688-689). The Appeals Council directed the ALJ to:

> \* Recontact treating psychiatrist Larry Felts, M.D., for clarification of his opinion and a medical source statement about what the claimant can still do despite her mental impairments (citation omitted). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.
>
> \* Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitation (citation omitted). In so doing,

---

[1] Morris' treating psychiatrist was Dr. Larry Felts ("Felts").

2

evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence.

(Tr. 689).

A fourth hearing was conducted, and the ALJ subsequently denied the application in July 2016. The Appeals Council denied the request for review. The result is that the July 1, 2016 decision by the ALJ is the final decision of the Commissioner. (Tr. 502-517).

*Administrative Hearing:*

At the fourth administrative hearing, Morris stated she was 38 years old, was five feet five inches tall and weighed 174 pounds.[2] Morris indicated she quit school in the ninth grade but subsequently obtained her GED. Her last work experience was as a part-time care giver many years ago. According to Morris, her most severe disabling problems are bipolar disorder, depression, and anxiety. She testified she lives with her boyfriend and their children, ages 20, 17, 13, and 11. She stated the kids "pretty much take care of theirself" and they help her with some household chores, although she cooked for the household, typically making microwaveable and instant meals. On occasion, Morris said she helped with cleaning chores. Morris described a very limited social life, not going shopping, to church, or to visit others. "I don't have any friends." (Tr. 534). Although she has a driver's license, she expressed fear at driving. Morris described problems with sleeping and a lack of motivation. She stated she often wakes the children and gets them off to school, then returns to bed until the afternoon. Asked about how often she had really good days, Morris said "Here lately not many." (Tr. 537). According to her, she deals with stress poorly, getting angry or

---

[2] Morris credited a gastric bypass surgery for significant weight loss. She testified to weighing 316 pounds at the initial hearing in October 2010. (Tr. 54).

3

crying and shutting down. Her daily activities are sitting in her room and watching television. Morris said the most difficult challenge of work would be "being around people." (Tr. 539). Asked if she could perform a job where she would be alone, Morris responded, "I don't know." (Tr. 540). She described forgetfulness, and credited her boyfriend with assisting her to take medication as prescribed. Her treating psychiatrist, Felts, died in 2015 and she now sees another physician near her residence. She walks a few blocks to her appointments. In response to questions from the ALJ, Morris stated her blood pressure is controlled with medication but she continues to have visual hallucinations despite medications. (Tr. 529-546).

Cota Brown ("Brown"), a vocational expert, testified. The ALJ asked Brown to assume a hypothetical worker of Morris' age, education, and experience, who could perform light work with the following mental restrictions: interpersonal contact would be incidental to the work performed; complexity of tasks would involve few variables; job would require little independent judgment; supervision would be simple, direct, and concrete; and there would be no interaction with the general public. Brown indicated such a worker could not perform Morris' past work, but could perform jobs in the national economy, such as the jobs of routing clerk or merchandise marker. If the hypothetical question was altered to include a worker who could not respond appropriately to supervision, coworkers, and usual work situations, could not tolerate even occasional pressure or stress, and she was prone to visual hallucinations, Brown testified no jobs would be available. (Tr. 547-549).

*ALJ's Decision:*

In his July 2016 decision following the fourth administrative hearing, the ALJ determined Morris had the severe impairments of schizoaffective disorder (bipolar type), anxiety disorder (not

4

otherwise specified), attention deficit hyperactivity disorder ("ADHD"), and borderline intellectual functioning. The ALJ considered the criteria of "paragraph B," finding Morris to have mild limitations of daily living, moderate limitations in social functioning, moderate limitations regarding concentration, persistence, and pace, and no episodes of decompensation. The ALJ assessed Morris with the RFC to perform light work with the limitations which generally mirrored[3] those specified in the first hypothetical question posed to Brown. The ALJ thoroughly reviewed the medical evidence, including the extensive treatment by Felts beginning in 2005. The ALJ addressed the 2010 notations by Felts that Morris could not work, pointing to later notations in Felts' records demonstrating improvement by Morris. Due to this improvement, the ALJ assigned "limited weight" to Felts' opinions. (Tr. 514). The ALJ noted Felts' death necessitated an examination by a consultant, Dr. Kenneth B. Jones ("Jones"), to comply with the Appeals Council's remand instructions. Jones, a psychologist, was provided and reviewed a "copy of clinical notes from Hometown Behavioral Health" to assist in his evaluation. (Tr. 1146). Jones opined Morris could function in a basic work environment.[4] Finding Jones' opinion in line with other evidence of record, the ALJ gave "great weight" to his view. (Tr. 515). Based upon the RFC and the testimony of Brown, the vocational expert, the ALJ concluded Morris was not disabled. (Tr. 502-517).

---

[3] In his opinion, the ALJ found the RFC to include jobs where the complexity of tasks is learned and performed by rote. (Tr. 508). It appears that he also included this limitation in the hypothetical question posed to Brown, but there was a problem with transcription. (Tr. 548).

[4] Jones wrote, "Mica seems capable of working in a low stress environment where she is not around many people. She mentions today that she feels a janitorial job where she works alone is a possibility for her." (Tr. 1149).

**ALJ erred in assigning "great weight" to the opinion of Jones:**

Relying too heavily on Jones' findings was error, according to Morris, because Jones was privy to only a fraction of the medical records. Morris argues that Jones was provided with her treatment records from February 2015 through March 2016 but not provided Felts' treatment records from January 2005 through August 2014.

The answer to this argument is largely found in the language of the Order of the Appeals Council. A close examination of this Order shows the Appeals Council was concerned that the record did not include a "mental residual functional capacity assessment, a psychiatric review technique, or a consultative mental evaluation." (Tr. 688). The ALJ was directed to obtain clarification from Felts and a "medical source statement about what the claimant can still do despite her mental impairments." (Tr. 689). Since Felts was deceased, it was permissible to utilize a consultative examiner. Regardless of whether the information was obtained from Felts or another physician, the directive of the Appeals Council was to obtain a statement about what Morris *can still do*. The mandate for Felts or the consultative examiner was in the present tense and not a request for a physician to review the entirety of the records. Given this parameter, the question is whether Jones was provided with adequate medical records upon which to base his findings. We find this to be the case for two reasons. One, Jones himself tested Morris and reviewed the records without objecting to their scarcity. He offered his opinions without reservations. Two, the records provide a great deal of background on Morris' treatment, so that Jones was adequately informed of her history. There is no merit to this argument.

It is noteworthy that the Appeals Council directed a mental residual functional capacity assessment, a psychiatric review technique, or a consultative mental evaluation be performed to

6

determine Morris' current mental abilities, the Appeals Council also directed the ALJ to consider her RFC "during the entire period at issue." (Tr. 689). The ALJ complied with this directive with a thorough opinion, considering the medical evidence beginning in 2005 and continuing throughout the relevant period. (Tr. 509-512).

**ALJ failed to properly assess her intellectual disability:**

Morris alleges error in the ALJ's consideration of Listing 12.05C. To meet Listing 12.05C, a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Maresh v. Barnhart*, 438 F.3d at 898 -899. *See also Cheatum v. Astrue*, 388 Fed. Appx. 574 (8th Cir. 2010) (the introductory language of Listing 12.05 requires a plaintiff to demonstrate she suffered deficits in adaptive functioning).

Jones administered IQ tests to Morris, resulting in the following scores: verbal IQ of 72; perceptual reasoning index of 79; working memory index of 77; processing speed index of 71; and full scale IQ of 70. (Tr. 1148). As a result, Morris falls within the numerical requirement to meet Listing 12.05C (IQ of 60-70). However, Morris fails to satisfy the Listing's requirement of a deficit in adaptive functioning. Indeed, Jones did not diagnose Morris as mentally retarded. Rather, he found her to have borderline intelligence. Second, and more important, Jones specifically opined Morris had "no adaptive functioning limitations, and is able to perform daily tasks in an age appropriate manner."[5] (Tr. 1149). The ALJ explicitly considered Listing 12.05C and found it

---

[5] Morris points to another entry in Jones' findings, indicating that her full scale IQ is likely an accurate estimate of her actual functioning level. Morris contends this general statement creates a conflict in the area of adaptive functioning which must be resolved on remand. We disagree. Jones' many specific statements are clear – his opinion is that Morris is healthy and has the mental and cognitive ability to perform basic tasks in a timely manner. (Tr. 1149). There is no internal conflict

7

inapplicable, noting Morris herself reported no adaptive functioning limitations. (Tr. 508).

In summary, Morris received no diagnosis of mental retardation and does not demonstrate adaptive functioning deficits to the point of mental retardation. There is no merit to the claim that she met Listing 12.05C, or to the related argument that remand is necessary to further explore this issue.

The ultimate decision of Berryhill was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Morris' complaint is dismissed with prejudice.

IT IS SO ORDERED this 17th day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE

---

to be resolved.